IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FRIENDS OF SCOTLAND,
INCORPORATED,

    Plaintiff,

v.

GEOFFREY SCOTT CARROLL,

    Defendant.

No. C 12-01255 WHA

**ORDER GRANTING MOTION TO TRANSFER AND VACATING HEARING**

## INTRODUCTION

In this trademark action, defendant moves to transfer venue pursuant to 28 U.S.C. 1404. For the reasons stated below, the motion to transfer is **GRANTED**.

## STATEMENT

Plaintiff Friends of Scotland is a Californian corporation with its principal place of business in Saratoga, California (Compl. ¶ 3). Since its incorporation, Friends of Scotland "has been engaged in charitable work promoting a contemporary view of modern Scotland by showcasing Scottish cultural, educational, historical, and genealogical connections between the United States and Scotland" (*id.* at ¶ 9). This involved holding a fashion show called "Dressed to Kilt" (*ibid.*) (internal quotation marks omitted). Plaintiff alleged that it is the registered owner of the "Dressed to Kilt" mark and that it has used it in commerce associated with various fashion shows since the first Dressed to Kilt show on April 2003 (*id.* at ¶¶ 10–11, 18).

Defendant Geoffrey Scott Carroll is a Scottish citizen and resident of New York (Mtn., Carroll Decl. ¶ 1). According to defendant, he met with friends in 2002 to discuss organizing events that would "promote a more contemporary vision of Scotland . . . showcase and highlight Scottish talent, raise funds for philanthropic initiatives in the United States and Scotland, and help create the impression that 'made in Scotland' is a benchmark of the highest quality" (*id.* at ¶ 2). One of these events, a charity fashion show featuring Scottish fashion, design, and celebrities, would be called "Dressed to Kilt" (*id.* at ¶ 3) (internal quotation marks omitted).

Plaintiff alleged it hired defendant to produce the first Dressed to Kilt fashion show on April 2003 (Compl. ¶ 18); defendant, however, seems to claim that he and his show partner produced the first show themselves, and that defendant's business relationship with plaintiff did not begin until after the first show (Mtn., Carroll Decl. ¶¶ 7–8). Both sides agree that Mr. Carroll produced at least nine additional Dressed to Kilt shows (Mtn., Carroll Decl. ¶ 9; Compl. ¶ 18). Both sides also seem to agree that at some point before defendant began producing a different Scottish-themed fashion show, the business relationship between plaintiff and defendant terminated (Mtn., Carroll Decl. ¶ 11; Compl. ¶¶ 19–20). Plaintiff's claims revolve around defendant's alleged trademark violations from the continued use of the "Dressed to Kilt" trademark after the termination of the business relationship (Compl. ¶¶ 20–24). Defendant alleged related counterclaims. Defendant counterclaimed that he is the original creator of the "Dressed to Kilt" trademark and that plaintiff fraudulently applied for its trademark with the USPTO with full knowledge the mark belonged to defendant (Answer Br., Dkt. No. 13, at 8–14). Defendant now moves to transfer this action to the Southern District of New York.

## ANALYSIS

Defendant argues that pursuant to 28 U.S.C. 1404(a), this action should be transferred to the Southern District of New York because the Northern District of California is an improper venue. For the reasons below, this order agrees.

1. **LEGAL STANDARD**.

28 U.S.C. 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

2

where it might have been brought . . . ." Our circuit has identified several factors a court may consider when determining whether a Section 1404 change of venue should be granted:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000) (citations omitted). The district judge has discretion to conduct "individualized, case-by-case consideration of convenience and fairness" when weighing the various factors. *See Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). This order will now consider each *Jones* factor.

### 2. CONVENIENCE AND FAIRNESS DICTATE THAT THE ACTION BE TRANSFERRED.

Given the unique circumstances present here, and after weighing the *Jones* factors, this order finds that convenience and fairness dictate that the instant action be transferred to the Southern District of New York.

*First*, most, if not all, of the events in controversy occurred outside this district. Defendant was in New York when he corresponded with plaintiff to set up their now terminated business relationship (Mtn., Carroll Decl. ¶ 8). Plaintiff does not dispute this. Its president, however, negotiated from California, though plaintiff does not specify where (Opp., Dkt. No. 24, Baron Decl. ¶¶ 3, 6). Of the nine Dressed to Kilt shows after its April 2003 inaugural in New York, only two were not in New York (Opp., Dkt. No. 24, Baron Decl. ¶ 13). Those two shows were held outside this district, in Los Angeles (*ibid.*). Therefore, this factor favors the defendant.

*Second*, this action involves a federal question, and neither forum is more familiar than the other with the governing law. Therefore, this factor favors neither party.

*Third*, deference should be given to plaintiff's choice of its home forum, *Jones*, 211 F.3d at 498–99, and the burden placed on defendant to justify the transfer. *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). This order recognizes that there is no indication that plaintiff went "forum shopping" by filing the instant action in its home

3

forum. This factor favors plaintiff, but for reasons this order will continue to discuss, a transfer will ultimately result in a forum more convenient for all parties involved and better serve the interests of justice.

*Fourth*, only plaintiff has any substantive connection with this forum. Plaintiff's principal place of business and president resides in Saratoga, California (Opp, Baron Decl. ¶ 2–4). Defendant is a resident of New York (Mtn., Carroll Decl. ¶ 1). While defendant is the Chairman of the Advisory Board of FCI, a consulting firm based in Half Moon Bay, California, all transactions with that firm are conducted telephonically; defendant has never visited California for FCI business (Reply, Dkt. No. 27, Nelson Decl. ¶¶ 1–4). Contrary to plaintiff's assertion, this does not establish that defendant has "an active presence in California" (Opp., Dkt. No. 24, at 5). Therefore, this factor favors the defendant.

*Fifth*, the contacts relating to plaintiff's claims in this forum are minimal. Defendant's alleged infringing conduct all take place outside this district or on the Internet (Compl. ¶¶ 18–25). Therefore, this factor favors the defendant.

The *sixth*, *seventh*, and *eighth Jones* factors are related. Defendant asserts documents related to the claims are in New York or in Scotland (Mtn., Dkt. No. 23, at 9), but the undersigned judge has previously acknowledged that "[w]ith technological advances in document storage and retrieval, transporting documents does not generally create a burden." *Corley v. Kinder Morgan, Inc.*, No. 12-03209, 2012 WL 5077128, at *1 (N.D. Cal. Oct. 18, 2012).

As for witnesses, plaintiff's initial disclosure listed one potential witness in this district (plaintiff's president) (Mtn., Defendant's Exh. D). Defendant's initial disclosure listed 29 potential witnesses: fourteen in New York; six in Scotland or England; the location of three are unlisted; two in New Jersey; one in Canada; one in Los Angeles; one in Boston; and one in Portland, Oregon (Mtn., Defendant's Exh. E). One of the three whose location was not listed is Mr. Baron, plaintiff's president. This means at least two, but at most three, of all the potential witnesses listed in the initial disclosures reside in California and can be compelled to provide live testimony within this district. But numbers alone do not confer advantage to defendant;

4

the undersigned judge previously acknowledged that moving parties must describe the testimony of these potential witnesses and its relevance. *Symantec Corp. v. Johns Creek Software, Inc.*, No. 11-03146, 2011 WL 4026873, at *7 (N.D. Cal. Sept. 12, 2011) (citation omitted). Defendant does so here. In his initial disclosure, he states:

> The [29] individuals . . . possess knowledge related to . . . the Dressed to Kilt shows, the production of the Dressed to Kilt Shows, Friends of Scotland's use of their name for Dressed to Kilt Shows, the parties' working relationship regarding the Dressed to Kilt Shows, the creation of the Dressed to Kilt marks, and sponsorship of the Dressed to Kilt [S]hows."

Mtn., Defendant's Exh. E). Therefore, this factor weighs in defendant's favor.

Defendant's medical condition also favors transfer of venue. Plaintiff would require a heavy burden to be placed on defendant to prove his limitations (Opp., Dkt. No. 24, 6), but it cannot cite to any *controlling* authority that requires this order to do so. The authorities plaintiff does cite can be further distinguished because here, defendant provided a sworn and signed declaration from his physician that he is to "not travel by air or automobile for any extended period of time or over long distances due to his medical condition"(Reply, Dkt. No. 27, Getsos Decl. ¶ 5) (emphasis removed), and defendant's medical condition is not the *primary* justification this order relies on.

Plaintiff, however, raises a valid point in that defendant appended his doctor's declaration in his reply and not in his original motion. The undersigned judge disfavors such surprises. But following plaintiff's objection to the declaration, an order issued to allow both parties to further explore defendant's medical condition and limitations (Dkt. Nos. 33–35). This order finds the subsequent depositions only highlighted the need to be sensitive of defendant's medical condition. Defendant's doctor, under oath, recommended that defendant not travel to California "because of the extent and length of travel that would put him at potential risk for developing another clot and potentially another pulmonary embolism" (Getsos Dep. 31:13–17). It is unreasonable — as plaintiff suggests — to require defendant "[b]reak up his travel into shorter flights of one-and-a-half hours," "[f]ly in first or business class so that he may stretch," or "[w]ear graduated compression stockings designed to increase circulation." (Plaintiff Supplemental Br., Dkt. No. 45, at 1).

5

This order agrees with plaintiff that defendant should have filed this motion earlier, preferably with the first responsive pleading. But given the facts at hand, and the balance of factors to the extent above, the instant action should be transferred. The motion to transfer venue is **GRANTED**.

**CONCLUSION**

This action represents one of the rare instances in which a plaintiff's choice of venue must be disturbed. Given the circumstances and for the reasons stated above, defendant's motion to transfer venue pursuant to 28 U.S.C. 1404 is **GRANTED**. The hearing on March 28, 2013 is **VACATED**. The clerk shall transfer this action to the United States District Court for the Southern District of New York.

**IT IS SO ORDERED.**

Dated: March 21, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE